UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DEVORIS ANTOINE NEWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-1207-JDT-cgc |
| | ) | |
| KYLE C. ATKINS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET, ADDRESSING PENDING MOTIONS,
DISMISSING COMPLAINT AND AMENDED COMPLAINTS,
AND GRANTING LEAVE TO FURTHER AMEND

On September 15, 2020, Plaintiff Devoris Antoine Newson, who is presently incarcerated at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court granted pauper status and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) Newson filed an amendment on September 15, 2020, in which he modified his prayer for relief and attached an exhibit. (ECF No. 5.) On October 19, 2020, Newson filed a motion to amend (ECF No. 6) accompanied by an amended complaint that is intended to replace the original complaint. (ECF No. 7.) That motion is GRANTED. Newson submitted a third amendment on March 26, 2021, which adds a supplemental claim and again amends his prayer for relief. (ECF No. 18.) Construing the March 26th document as a motion to amend, it is also GRANTED.

The original complaint named as Defendants: (1) Judge Kyle C. Atkins[1]; (2) Assistant District Attorney (ADA) Benjamin Mayo;[2] (3) the Madison County Sheriff's Office (MCSO); (4) the Tennessee Department of Correction (TDOC); (5) TDOC Commissioner Tony C. Parker; (6) Shawn Phillips, Warden of the Bledsoe County Correctional Complex (BCCX); (7) attorney Kortney D. Simmons; (8) Madison County Sheriff John Mehr; and (9) the BCCX. (ECF No. 1 at PageID 1.)

The Clerk is directed to MODIFY the docket to include the following additional Defendants named in the amended complaint: (1) MCSO Lt. Larry Flowers; (2) MCSO Detective T.J. King; (3) Maria DeJesus, a Clerk in Madison County General Sessions Court;[3] (5) MCSO Deputy Lolan Coplen; (6) MCSO Deputy Jacob Nickell; (7) MCSO Captain Tom Rudder, Administrator of the Madison County Criminal Justice Complex (CJC); (8) MCSO Detective Ted Maxwell; (9) the City of Jackson; and (10) Madison County. (ECF No. 7 at PageID 35-38.)

The claims in Newson's pleadings arise from: (1) the issuance of felony affidavits against him on March 31, 2019, April 23, 2019, and April 25, 2019, which resulted in his allegedly illegal arrest and confinement (ECF No. 7 at PageID 36-37; ECF No. 18 at

---

[1] Judge Atkins is a Circuit Court Judge in Division III of the 26th Judicial District of Tennessee, which includes the counties of Chester, Henderson, and Madison. *See* Tenn. Code Ann. § 16-2-506(26)(A); *see also* www.madisoncountytn.gov/271/Judges.

[2] The District Attorney General for the 26th Judicial District is Jody S. Pickens, *see* www.tndag.org/district-26/, so Mayo apparently is an Assistant District Attorney.

[3] *See* www.madisoncountytn.gov/directory.aspx?EID=65.

PageID 108-09); (2) a visual body cavity search of his person at the CJC on August 5, 2020 (ECF No. 1 at PageID 2; ECF No. 7 at PageID 36-39; ECF No. 18 at PageID 109); (3) irregularities in his criminal proceedings which he alleges caused him to be wrongfully transported from the CJC to the BCCX (ECF No. 1 at PageID 2-3; ECF No. 7 at PageID 38); and (4) lack of proper medical care after he was assaulted at the TTCC (ECF No. 18 at PageID 109).  Newson alleges he suffered "humiliation, mental anguish, loss of liberty, involuntary slavery, [and] cruel and unusual punishment" from these events.  (ECF No. 1 at PageID 4; *see also* ECF No. 7 at PageID 36, 40.)

Alleging violations of the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments, he seeks money damages, and injunctive relief "taking [him] into federal custody" because he "never consented to the . . . local municipality['s] . . . jurisdiction." (ECF No. 7 at PageID 40.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court

accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Newson filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Statute of Limitations*:  In the amended complaint, Newson alleges he was falsely arrested on illegal felony warrants obtained by Defendants Nickell, Coplen, and King in March and April of 2019.  (*See* ECF No. 7 at PageID 36-37; ECF No. 18 at PageID 108.)  Those claims are time barred.  "The statute of limitations applicable to a § 1983 action is the statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises."  *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (internal citations and quotations omitted).  In Tennessee, the applicable statute of limitations runs for one year.  Tenn. Code Ann. § 28-3-104(a)(1)(B).

Newson's amended complaint containing the false arrest claims was not filed until October 2020, more than one year after those claims arose in March and April 2019.  (*See* ECF No. 7 at  PageID 40.)  Moreover, the original complaint may be deemed filed on September 8, 2020, when it was received in the BCCX mailroom, also more than one year later.[4]  (*See* ECF No. 1-1 at PageID 7.)  Therefore, all claims against Defendants Nickell, Coplen, and King are untimely and are subject to dismissal on that basis.

---

[4] Even if the original complaint had been filed within one year of Newson's false arrest and false imprisonment claims, the claims would not relate back to that date under Federal Rule of Civil Procedure 15(c)(1)(C).  An amendment adding new parties is a new cause of action and does not relate back for purposes of the statute of limitations.  *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *Holt v. Target Corp.*, No. 3:20-cv-0824, 2021

5

*Claims Against BCCX/Official Capacity Claims Against State Employees*:  The Court construes Newson's claims against the TDOC and the BCCX, a TDOC facility, as claims against the State of Tennessee.  His claims against Judge Atkins, ADA Mayo, TDOC Commissioner Parker, and BCCX Warden Phillips in their official capacities are also treated as claims against the State of Tennessee.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Newson, however, does not state a valid claim against the State of Tennessee.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court.  *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).  Tennessee has not waived its sovereign immunity and therefore may not be sued for damages.  *See* Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within

---

WL 2389476, at *5 (M.D. Tenn. May 6, 2021).

6

the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

<u>*Claims Against City of Jackson, Madison County, and MCSO, and Official Capacity Claims Against County Employees*</u>: Newson has sued both the City of Jackson and Madison County. He also names the MCSO as a separate Defendant and asserts official capacity claims against Madison County employees Sheriff John Mehr, MCSO Lt. Flowers, MCSO Captain Rudder, and Clerk DeJesus. However, his claims against the MCSO and the official capacity claims against the County employees must also be treated as claims against Madison County. *See Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of

the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Newson does not allege he was harmed by a policy or custom of either Madison County or the City of Jackson. He therefore has no claims against the City of Jackson or Madison County, or against the County employees in their official capacities.

<u>*Claim Regarding Visual Body Cavity Search*</u>: On August 5, 2020, during Newson's incarceration at the CJC, Sheriff Mehr and Captain Rudder allegedly ordered Newson called out of his cell and taken to the front of the facility, where TDOC transport officers took him to a private room. (ECF No. 1 at PageID 2; ECF No. 7 at PageID 37.) Once there, the officers ordered Newson to remove his clothes, lift his genitals and spread his buttocks. (ECF No. 1 at PageID 2; ECF No. 7 at PageID 37.) He was then transported to the BCCX. (ECF No. 1 at PageID 2; ECF No. 7 at PageID 37.) Newson does not identify the constitutional right he asserts was violated by this conduct, alleging only that the visual body cavity search was humiliating.

Because Newson alleges the documents showing he had been convicted were fraudulent since certain matters were still pending in the trial court, it is unclear whether he was a convicted prisoner or still a pre-trial detainee on August 5, 2020. For a convicted prisoner, a claim based on a visual body cavity search would arise under the Eighth Amendment, while a search of a pre-trial detainee is governed by either the Fourth Amendment's prohibition on unreasonable searches or the Fourteenth Amendment's

objective reasonableness standard. However, the Court need not resolve which standard applies, as Newson's allegations do not state a claim under any analysis.

Newson has not sued the TDOC officers who actually conducted the search. Though he vaguely alleges it was ordered by Mehr and Rudder, he has not alleged the purpose of the search or asserted that it was unlawful or unreasonable.[5] He also does not contend the officers used force of any kind or touched him during the search, foreclosing any claim of excessive force. He asserts only that he was humiliated. Without further allegations demonstrating how the search amounted to a specific constitutional violation, this is insufficient to state any claim on which relief may be granted.

*Claims Regarding Confinement and Criminal Proceedings in State Court*: Newson alleges several claims relating to the state criminal charges against him and to his imprisonment. His pleadings describe the following timeline: (1) Deputy Nickell filed a felony affidavit against him, which was sworn by a General Sessions clerk and "resulted in a[n] illegal warrant being issued which resulted in me being illegally arrested at the Jackson Mall on April 2, 2019" (ECF No. 7 at PageID 36); (2) Deputy Coplen filed an April 23, 2019, felony affidavit, and Lt. Flowers arrested Plaintiff (*id*.); and (3) Detective King filed an April 23, 2019, felony affidavit, to which Clerk DeJesus swore (*id*. at PageID 37).[6]

---

[5] Given that Newson alleges he was searched by the TDOC officers instead of MCSO officers, it is possible that TDOC policy requires that all prisoners be searched for contraband before they board a TDOC transport vehicle.

[6] As the Court found, *supra*, the claims arising out of the events occurring in March and April 2019 are time barred.

Newson entered a guilty plea on February 12, 2020, "due to a misunderstanding between Prosecutor Mayo and Plaintiff." (*Id.*) Newson then moved to withdraw his plea. (ECF No. 1 at PageID 3; *see also* ECF No. 7 at PageID 37.) He is displeased that the underlying case against him "is still pending." (*Id.*) He argues that Judge Atkins and Mayo signed "fraudulent documents" against him, "saying that I had been convicted of numerous crimes." (ECF No. 1 at PageID 2; *see also* ECF No. 7 at PageID 38.) Newson contends he was wrongfully "sent to prison with direct consent" of Judge Atkins, Mayo, Mehr, Simmons, and Rudder – who allegedly orchestrated a "conspiracy to frame and silence the Plaintiff." (ECF No. 1 at PageID 3.) On August 15, 2020, Newson asked Judge Atkins about the basis for his incarceration, but Atkins and Simmons both "ignored" him. (ECF No. 7 at PageID 38.) Newson argues that the "matters that I stand convicted of are false." (ECF No. 1 at PageID 3.) He alleges he was "enslaved involuntarily and entered into TDOC as a convicted felon falsely." (ECF No. 7 at PageID 38; *see also* ECF No. 1 at PageID 3.) He also alleges Defendants Maxwell and King, as well as other "numerous members of MCSO" are guilty of unspecified subornation of perjury. (ECF No. 7 at PageID 38.)

For a state prisoner who challenges "the very fact or duration of his physical imprisonment and [who] seeks . . . immediate release or a speedier release from that imprisonment, [the] sole federal remedy is a writ of habeas corpus." *Hadley v. Werner,* 753 F.2d 514, 516 (6th Cir. 1985) (quoting *Preiser v. Rodriguez,* 411 U.S. 474, 500 (1973)). *See also Schilling v. White,* 58 F.3d 1081, 1086 (6th Cir. 1995). Thus, Newson seeks relief that is only available through a habeas petition, not under § 1983.

10

Furthermore, if Plaintiff has been convicted, his claims regarding that conviction are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A state prisoner has no cause of action under § 1983 if the claims in that action hinge on factual proof that would call into question the validity of a state court order directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck,* 512 U.S. at 481-82. Here, *Heck* applies to bar Newson's claims arising from his criminal conviction and incarceration.

If Newson's criminal prosecution is still ongoing, this Court may not intervene. It is not within this Court's jurisdiction to exercise authority over state court criminal matters. States have sovereignty within their boundaries as to crimes committed there. *See* 18 U.S.C. § 3231. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory

language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)).

Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971); *see also Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) ("*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity . . . *Younger* permits abstention when there is an ongoing state criminal prosecution."); *Thurman v. McMinn Cnty. Jail*, No. 17-cv-114, 2017 WL 1593470, at *2 (E.D. Tenn. Apr. 28, 2017) ("To the extent Plaintiff asserts a claim arising out of any criminal charges currently pending against him, any such claim is barred by the abstention doctrine set forth in *Younger*, . . . which provides that federal courts must abstain from entertaining lawsuits by plaintiffs seeking to enjoin a criminal prosecution against them in state court where those ongoing proceedings implicate important state interests and the plaintiffs have an adequate opportunity to raise their challenges in that forum." (citing *Shea v. Littleton*, 414 U.S. 488, 499-504 (1974))).

In this case, Newson does not allege he lacks the opportunity to raise the challenges to his prosecution in state court and cannot show the absence of important state interests in prosecuting the charges; he therefore fails to allege the type of extraordinary circumstances that would permit the Court to become involved in his state criminal proceedings.[7]

---

[7] The same rationale applies to Newson's request for the Court to order him transferred

*Claims Against Judge Atkins*:  Newson claims that Judge Atkins wrongfully consented to his incarceration. He argues that the Judge signed "fraudulent documents" against him as part of a "conspiracy" to "frame and silence" him. (ECF No. 1 at PageID 2; *see also* ECF No. 7 at PageID 38.)  His claims against Judge Atkins are barred by judicial immunity.

The judicial immunity doctrine is expansive and provides judges with "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991).  In other words, judges, in the performance of their judicial functions, are absolutely immune from civil liability. *See Mireles*, 502 U.S. at 9-10; *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty.*, 753 F.3d 639, 648-49 (6th Cir. 2014). Judicial immunity is abrogated only when a judge is not acting in a judicial capacity, or when the judge acts in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12. *See also Lucas v. Holland*, No. 16-2309-JDT-cgc, 2017 WL 1088300, at *5 (W.D. Tenn. March 22, 2017), *aff'd*, No. 17-5425, 2017 WL 4764472, (6th Cir. Sept. 26, 2017) (actions "during the course of criminal proceedings . . . clearly are within . . . the scope of [judges'] judicial function"). Accordingly, if a judge pursued the challenged conduct in the course of judicial duties, then he is entitled to judicial immunity. *Palazzolo v. Benson,* No. 95-1067, 1996 WL 156699, at *4 (6th Cir. April 3, 1996).  A judge will not be deprived of immunity because the action he took may have been in error, was done maliciously, or was in excess of the judge's authority. *Mireles,* 502 U.S. at 11; *Pierson v. Ray,* 386 U.S. 547, 554 (1967).

---

from the custody of the TDOC into federal custody. (ECF No. 7 at PageID 40.)

13

A judge is subject to financial liability involving a judicial act only when he has acted in the clear absence of all jurisdiction. *Stump*, 435 U.S. at 356-57; *Pulliam v. Allen,* 466 U.S. 522 (1984).  A judge so acts only if the matter is clearly outside the subject matter jurisdiction of the court. *King v. Love,* 766 F.2d 962, 965 (6th Cir.), *cert. denied,* 474 U.S. 971 (1985).

Newson's claims against Judge Atkins are based entirely on actions that he took in his judicial capacity during the state criminal proceedings.  There are no facts in the complaint or the amended complaint from which to reasonably infer that Judge Atkins's conduct in those proceedings lacked jurisdiction. *See Mireles*, 502 U.S. at 11-12.  Presiding over criminal proceedings is within the scope of Judge Atkins's jurisdiction and precisely the circumstance for which absolute judicial immunity applies.  Newson fails to state any colorable claim against Judge Atkins.

*Claims Against ADA Mayo*:  Newson claims that "Mayo and members of the [MCSO] knowingly used false information in an attempt to have me convicted." (ECF No. 7 at PageID 38-39.)  However, prosecutors such as Defendant Mayo are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions.  Such conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012).  Thus, Newson's claim against Mayo is barred by absolute prosecutorial immunity.  *Id.* at 427-28; *Burns v. Reed*, 500 U.S. 478, 490-492 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989).

*Claims Against Defendant Simmons*:  On July 6, 2020, Simmons was appointed as Newson's defense counsel.  (ECF No. 7 at PageID 38; *see also* ECF No. 1 at PageID 2.)  He alleges he told Simmons that King, Maxwell, and "numerous MCSO members" had suborned perjury against Newson, and he instructed her to "collect all material videos that were suppressed by the State that would prove my innocence."  (ECF No. 7 at PageID 38.)  However, Simmons allegedly "filed no motions or subpoenas or made attempts to defend me."  (*Id*. at PageID 39.)  Instead, Newson alleges Simmons "attempt[ed] to deceive me and convince me I was supposed to be in prison, and on September 14, 2020 consented and conspired with Judge Atkins to have me remain in prison another 90 days."  (*Id*.)  Simmons allegedly "g[ave] her consent to the injustice committed against her own client."  (ECF No. 1 at PageID 3.)

Liberally construing the complaint and amended complaint, Newson seeks damages for denial of his constitutional right to present a defense.  *See Nevada v. Jackson*, 569 U.S. 505, 509 (2013).  However, Newson may not sue his defense attorney under § 1983.  Courts have uniformly held that private attorneys are not state actors who can be sued under § 1983.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983"); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (private attorney who is appointed by the court does not act under color of state law); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amendable to suit under § 1983").  The same analysis would apply even if Simmons was a public

15

defender. *See Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (quoting *Polk Cnty.*, 454 U.S. at 325 ("[P]ublic defenders do not 'act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'")). Simply, Simmons is not a proper § 1983 defendant.

Moreover, any claim that Simmons's assistance was constitutionally ineffective must be brought in a habeas corpus petition rather than an action under § 1983. *See Preiser v. Rodriguez*, 411 U.S. at 488-90.

Furthermore, Newson's brief mention of a state-law legal malpractice claim against Simmons (ECF No. 7 at PageID 40) also fails to state a claim for relief. A legal malpractice claim requires a showing that: (1) the accused attorney owed a duty to plaintiff; (2) the attorney breached that duty; (3) the plaintiff suffered damages; (4) the breach was the cause in fact of the plaintiff's damages; and (5) the attorney's negligence was the proximate cause of damages. *See*, *e.g.*, *Gibson v. Trant*, 58 S.W.2d 103, 108 (Tenn. 2001). A criminal defendant must be exonerated before maintaining a malpractice claim against his or her former attorney in civil court. *Id*. at 105. Otherwise, the attorney was not the proximate cause of the client's conviction. *Id*. at 112. Since those circumstances are absent here, Newson has no cognizable legal malpractice claim.

*Conspiracy Claim*: Newson alleges that Judge Atkins, Mayo, Mehr, Simmons, and Rudder participated in a "conspiracy" to file "false documents" against him, to keep him confined, and to "frame and silence" him. (ECF No. 1 at PageID 3; ECF No. 7 at PageID 37-39.)

Litigants must plead conspiracy claims with specificity, which means that "vague and conclusory allegations unsupported by material facts are insufficient." *See Hamilton v. City of Romulus*, 409 F. App'x 826, 835-36 (6th Cir. 2010)). Here, Newson's bare allegation of a "conspiracy" against him, (*see* ECF No. 1 at PageID 3; ECF No. 7 at PageID 37-39), fails to sufficiently plead conspiracy.

*Claim for Lack of Medical Care*: Newson alleges that at the TTCC on February 3, 2021, he was "nearly beat to death by 10 Treetop Bloods which resulted in a broken jaw and several concussions" for which injuries he was denied proper medical treatment; he contends he needs as operation. (ECF No. 18 at PageID 109.)

Claims regarding the denial of medical care are reviewed under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Seiter*, 501 U.S. at 297. Under *Estelle*, 429 U.S. at 104, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment." To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

That is, an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The subjective component requires that jail officials acted with the requisite intent—*i.e.*, had a

17

"sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Seiter*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837.

Assuming that Newson's allegation that he suffered a broken jaw and "several concussions" in the assault at the TTCC amounted to a serious medical need, he has not alleged the specific circumstances surrounding the alleged denial of treatment. He simply states he did not receive adequate medical care. Indeed, Newson has not even sued anyone at the TTCC and thus fails to allege that any specific individual at that facility had a "sufficiently culpable state of mind" and acted with "deliberate indifference" to his medical needs. His contentions do not satisfy the subjective prong of Eighth Amendment analysis.[8]

For all of the foregoing reasons, Newson's complaint and amended complaints are all subject to dismissal for failure to state a claim on which relief may be granted.

<u>*Opportunity to Further Amend*</u>: The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.

---

[8] Moreover, Newson's claim that he was denied medical care at the TTCC is wholly unrelated to the other claims asserted in this case and did not occur in this district. Therefore, the proper venue for that claim would be in the Nashville Division of the U.S. District Court for the Middle District of Tennessee. *See* 28 U.S.C. § 1391(b); *see also* 28 U.S.C. § 123(b)(1). Because Newson's meager allegations fail to state a claim, however, the Court declines to sever and transfer that claim to the proper court.

*LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Newson should be given the opportunity to further amend.

*Conclusion*: In conclusion, Newson's motion to amend is GRANTED. (ECF No. 6.) His motions to serve process, motion for default judgment, and motions to appoint counsel are DENIED. (ECF Nos. 8, 10, 12, 19, & 21.)

The Court hereby DISMISSES Newson's complaint and amended complaints for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). However, leave to further amend is GRANTED. Any amendment must be filed **on or before October 14, 2021.**

Newson is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, must adequately identify all Defendants sued, and must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment. If Newson fails to file an amended complaint within the time

19

specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                               s/ **James D. Todd**  
                                              JAMES D. TODD  
                                              UNITED STATES DISTRICT JUDGE