UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEVORIS ANTOINE NEWSON,                    )
                                           )
          Plaintiff,                       )
                                           )
vs.                                        )         No. 20-1207-SHM-cgc
                                           )
CIRCUIT JUDGE KYLE C. ATKINS, ET AL., )
                                           )
          Defendants.                      )

---

**ORDER DISMISSING THIRD AMENDED COMPLAINT (ECF NO. 24) WITH
PREJUDICE; DENYING LEAVE TO AMEND; DENYING PENDING MOTION (ECF
NO. 25); CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD
FAITH; DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL;
NOTIFYING NEWSON OF STRIKE RECOMMENDATION UNDER 28 U.S.C.
§ 1915(g); AND DISMISSING CASE IN ITS ENTIRETY**

---

On September 15, 2020, Plaintiff Devoris Antoine Newson, who is presently incarcerated

at the Trousdale Turner Correctional Center (the "TTCC") in Hartsville, Tennessee, filed a *pro se*

complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1 (the "Original Complaint") and a motion for

leave to proceed *in forma pauperis*.  (ECF No. 2.)  The Court granted leave to proceed *in forma*

*pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b).  (ECF No. 4.)  On

October 1, 2020, Newson amended the Original Complaint's prayer for relief.  (ECF No. 5.)  On

October 19, 2020, Newson filed a motion to amend (ECF No. 6) and a first amended complaint.

(ECF No. 7 (the "FAC").)  On March 26, 2021, Newson filed a second amended complaint.  (ECF

No. 18 (the "SAC").)  On September 23, 2021, the Court: (1) granted Newson's October 19, 2020

motion to amend; (2) granted Newson's March 26, 2021 motion to amend; (3) dismissed the FAC

and the SAC for failure to state a claim to relief; (4) denied Newson's pending motions; and (5) granted leave to amend.  (ECF No. 22 (the "Screening Order").)

On October 14, 2021, Newson filed a third amended complaint.  (ECF No. 24 (the "TAC").)[1]  On January 3, 2022, Newson filed a motion for issuance of summons.  (ECF No. 25 (the "Motion For Summons").)  On February 7, 2022, Newson re-filed the TAC (ECF No. 26 at PageID 166 – ECF No. 26-1 at PageID 181), with five proposed summonses.  (ECF No. 26-1 – ECF No. 26-6.)

The TAC and the Motion For Summons are before the Court.

The Clerk shall modify the docket to add these Defendants: (1) John Doe MCSO Detention Specialists; (2) John Doe MCCJC Doctor; (3) TTCC Health Administrator Josh Lyons; (4) the Warden of the TTCC; (5) Doctor Levik of the TTCC; (6) John Doe Captain of the TTCC; (7) John Doe Nurse of the TTCC; and (8) CoreCivic.  (*See* ECF No. 24 at PageID 143-44; ECF No. 24-1 at PageID 153.)

For the reasons explained below, the TAC is DISMISSED WITH PREJUDICE for failure to state a claim to relief and the Motion For Summons is DENIED as moot.

## I.   <u>PROCEDURAL BACKGROUND</u>[2]

### A.   <u>Newson's Claims</u>

---

[1]   The Court considers the TAC as timely because the TAC bears a March 14, 2021 postmark date.  (ECF No. 24-3 at PageID 163.)  *See Houston v. Lack*, 487 U.S. 266, 270, 276 (1988) (adopting the mailbox rule for federal *pro se* prisoner filings).

[2]   The legal standard for screening prisoner claims under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA"), and the requirements to state a claim under § 1983, are set forth in the Screening Order and are not restated here.  (*See* ECF No. 22 at PageID 122-24.)

The claims in the Original Complaint, the FAC and the SAC (collectively, the "Initial Pleadings") arise from: (1) three felony affidavits issued against Newson in March 2019 and April 2019, which resulted in his arrest and confinement (ECF No. 7 at PageID 36-37; ECF No. 18 at PageID 108-09 (the "Illegal Arrest And False Imprisonment Claim")); (2) a visual body cavity search of Newson at the Madison County Criminal Justice Complex (the "MCCJC") on August 5, 2020 (the "Search") (ECF No. 1 at PageID 2; ECF No. 7 at PageID 36-39; ECF No. 18 at PageID 109 (the "Body Search Claim")); (3) alleged irregularities in Newson's state court criminal proceedings in 2020 that caused his wrongful transport from the MCCJC to the Bledsoe County Correctional Complex (the "BCCX") (ECF No. 1 at PageID 2-3; ECF No. 7 at PageID 38 (the "Wrongful Transfer Claim")); and (4) inadequate medical care after gang member inmates assaulted Newson at the TTCC on February 23, 2021 (the "Assault") (ECF No. 18 at PageID 109 (the "Medical Care Claim")).

The TAC arises from: (1) the Search (ECF No. 24-1 at PageID 154-55); (2) the conditions of Newson's confinement at the MCCJC in 2020 (*id*. at PageID 155-57 & 159); (3) alleged irregularities in Newson's criminal proceedings in November 2020 (*id*. at PageID 155 & 157); (4) inadequate medical care for Newson's broken jaw (*id*. at PageID 156); (5) confiscation of Newson's "legal documents" (*id*. at PageID 156-57); (6) inadequate medical care in May 2021 for Newson's injuries incurred during the February 2021 Assault (*id*. at PageID 157-58); (7) Newson's retaliatory confinement in the MCCJC's "suicide cell" (*id*. at PageID 155); (8) inadequate prison grievance process (*id*. at PageID 155-56); (9) unconstitutional conditions of confinement (*id*. at PageID 155-57); (10) Newson's allegedly false arrest on March 12, 2021 (*id*. at PageID 156); and (11) Newson's allegedly wrongful imprisonment in April 2021 (*id*. at PageID 157). The TAC: (1) re-alleges the Medical Care Claim, the Body Search Claim, and the Wrongful Transfer Claim (*id*.

at PageID 154); and (2) alleges claims of (a) denial of Newson's right of access to the courts (*id.* at PageID 154 & 156-57) and (b) Newson's housing misclassification at the TTCC in 2021 (*id.* at PageID 159).

### B.  <u>The Defendants</u>

Newson's pattern of adding and removing Defendants in the case is complex.  A brief summary is relevant to analysis of the TAC before the Court.

The Original Complaint sues: (1) Judge Kyle C. Atkins; (2) Assistant District Attorney for the 26th Judicial District, Benjamin Mayo; (3) the Madison County Sheriff's Office (the "MCSO"); (4) the Tennessee Department of Correction (the "TDOC"); (5) TDOC Commissioner Tony C. Parker; (6) Shawn Phillips, Warden of the BCCX; (7) attorney Kortney D. Simmons, who served as Newson's criminal defense attorney; (8) Madison County Sheriff John Mehr; and (9) the BCCX (collectively, the "Original Defendants").  (ECF No. 1 at PageID 1.)

The FAC sues the Original Defendants and: (1) MCSO Lt. Larry Flowers; (2) MCSO Detective T.J. King; (3) Maria DeJesus, a Clerk in Madison County General Sessions Court; (4) MCSO Deputy Lolan Coplen; (5) MCSO Deputy Jacob Nickell; (6) MCSO Captain Tom Rudder, Administrator of the MCCJC; (7) MCSO Detective Ted Maxwell; (8) the City of Jackson; and (9) Madison County.  (ECF No. 7 at PageID 35-38.)

The SAC: (1) sues ten of the Original Defendants[3] and (2) adds (a) Deputy Sheriff Lolan Coplen and (b) two unnamed "TDOC agents."  (ECF No. 18 at PageID 108-09.)

---

[3]  The SAC sues these Original Defendants: Judge Atkins; Deputy Nickell; Lt. Flowers; Detective King; Sheriff Mehr; Warden Phillips; A.D.A. Mayo; the BCCX; the TDOC; and the MCCJC.  (ECF No. 18 at PageID 108-09.)

The TAC: (1) sues three of the Original Defendants[4]; and (2) adds (a) four John Doe MCSO Detention Specialists, (b) John Doe MCCJC Doctor, (c) TTCC Health Administrator Josh Lyons, (d) the Warden of the TTCC, (e) Doctor Levik of the TTCC, (f) John Doe Captain of the TTCC, and (g) John Doe Nurse of the TTCC (Defendants (2)(a) through (2)(g) are referred to as the "TAC New Defendants").  (ECF No. 24 at PageID 143-44; ECF No. 24-1 at PageID 153.)

### C.  Newson's Requested Relief

The Initial Pleadings sought declaratory relief (ECF No. 24-1 at PageID 160), injunctive relief (*id*. at PageID 160-61), compensatory damages (*id.* at PageID 160-61), and punitive damages (*id*. at PageID 161), as does the TAC.  (ECF No. 24-1 at PageID 160-61.)

## II.   ANALYSIS

### A.  THE TAC ALLEGES NO NEW FACTS THAT ALTER THE SCREENING ORDER'S CONCLUSIONS ABOUT THE (1) MEDICAL CARE CLAIM, (2) BODY SEARCH CLAIM, AND (3) WRONGFUL TRANSFER CLAIM

#### 1.  The Medical Care Claim

Newson's original pleadings alleged inadequate medical care at the TTCC for the injuries Newson sustained during the Assault.  (ECF No. 18 at PageID 109.)  The Screening Order concluded that (a) Newson failed to sufficiently allege specific facts about the treatment of his broken jaw and concussions and (b) Newson did not allege facts demonstrating any Defendant's sufficiently culpable state of mind.  (ECF No. 22 at PageID 136 & 137.)

The TAC alleges Newson suffered "concussions" and "a broken, dislocated jaw" during the Assault.  (ECF No. 24-1 at PageID 157.)  The John Doe Defendant-nurse transported Newson to the TTCC medical clinic, where the Defendant-nurse diagnosed Newson's broken jaw.  (*Id.*)

---

[4]  The TAC sues these Original Defendants: (a) Sheriff Mehr; (b) Captain Rudder; and (c) Warden Phillips.  (ECF No. 24 at PageID 143-44; ECF No. 24-1 at PageID 153.)

Newson was "then left alone in the clinic to suffer for about six hours" until the Defendant-nurse "realized something was seriously wrong … due to [Newson's] … extremely high … blood pressure." (*Id.*) "TTCC employees" then transferred Newson to an outside radiology clinic, where a doctor diagnosed Newson's dislocated and broken jaw.  The doctor ordered that Newson be housed in the TTCC's infirmary, provided with pain medication, and referred to an oral surgeon (the "Outside Physician's Order").  (*Id.*)  When Newson returned to the TTCC, three Doe Defendants disregarded the Outside Physician's Order and placed Newson in the TTCC's general inmate population. (*Id.*)  After Newson submitted sick calls for "days," he received ibuprofen and clindamycin from the John Doe Defendant-nurse. (*Id.*)  Newson submitted grievances about his symptoms for "2 months."  (*Id.*)  When Defendant Lyons "stated nothing was wrong with [Newson] an[d] he had been treated," Newson "explained the extent of his injuries" to Lyons.  (*Id.*)

At the end of May 2021, the Doe Defendant-warden sent Newson to Dr. Josh Sybo, an oral surgeon in Nashville.  (*Id.* at PageID 158.)  Dr. Sybo told Newson that his jaw bone "healed dislocated" due to "the failure of the TTCC to act in a timely manner." (*Id.*)  On June 8, 2021, Dr. Sybo operated on Newson (the "Operation") and released him to the TTCC with prescriptions for pain medication and antibiotics (the "Sibo Prescriptions").  (*Id.*)  Instead of dispensing the Sibo Prescriptions, the Doe Defendant-doctor provided ibuprofen and antibiotics to Newson, "which were ineffective."  (*Id.*)  Newson submitted several sick-call requests for "stronger medication," which were denied. (*Id.*)  The TAC alleges that, as a result, Newson suffered "extreme pain an[d] permanent nerve damage." (*Id.*)

On August 8, 2021, Newson had an appointment with Dr. Sybo, who determined that the Operation "was successful" in straightening Newson's jaw.  Dr. Sybo also determined, however, that Newson's "body did not take to the plates placed in [Newson's] bone structure, [which]

caus[ed] infection, fluids, etc." (*Id*.)  Dr. Sybo ordered "open face surgery to remove all plates an[d] fluid" (the "Surgery Order").  (*Id*.)  Lyons, Fink, and the TTCC's "medical" were "notified" of the Surgery Order, but those Defendants have "done nothing."  (*Id*.)  The Surgery Order was pending when Newson filed the TAC.  (*Id*.)

Construing the TAC's allegations about Newson's jaw liberally, the TAC sufficiently alleges a serious medical condition that demonstrates the Eighth Amendment's objective prong. (*See* ECF No. 22 at PageID 136-37 (citations omitted).) *See*, *e.g.*, *Dungan v. Baughman*, No. 18-0200, 2019 WL 524661, at *7 (E.D. Cal. Feb. 11, 2019) ("A dislocated jaw is a serious medical issue").

The TAC insufficiently alleges facts demonstrating the Eighth Amendment's subjective prong because:

(a.)    Newson's displeasure with his post-Assault wait-time in the TTCC's medical clinic is, at most, dissatisfaction with the ordinary incidents of medical care and/or the circumstances of confinement.  The TAC does not allege that Newson sustained life-threatening injuries during the Assault.  Newson acknowledges that he received medical care immediately after the Assault.  That Newson waited a few hours for a second examination by the Doe Defendant-nurse is not a deprivation of constitutional rights.  The TAC does not allege facts demonstrating that Newson was denied medical care.  The TAC does not allege that Newson's vaguely-described "suffer[ing]" while waiting for a follow-up examination was a sufficiently serious medical need.

(b.)    Newson was displeased with the ibuprofen and clindamycin he received from the TTCC instead of the medications in the Outside Physician's Order and the Sibo Prescription.  The TAC does not allege the particular medications prescribed by the Outside Physician's Order or the Sibo Prescription.  In analogous circumstances, the Sixth Circuit has concluded that courts must

be "reluctant to second guess medical judgments where," as in Newson's case, "a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment." *See Clark v. Corr. Corp. of Am.*, 98 Fed. App'x 413, 416 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  "[W]hen a prisoner receives medical attention, courts do not second guess the judgment of medical professionals." *Denton v. Transcor Am., Inc.,* No. 3:96-cv-2344, 1999 WL 33603122, at *3 (W.D. Ky. Jan. 15, 1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 107 (1976).  Medical professionals' judgment about the type of care to be provided and which medications to dispense is an issue for a medical malpractice claim under state law -- and not a claim under the Eighth Amendment. *Id.; see also Wright v. Gardener,* 57 Fed. App'x 666, 669 (6th Cir. 2003) ("[A] difference of opinion between a prisoner and a doctor over diagnosis or treatment ... fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need").

(c.)    After Newson "explained the extent of his injuries" to Lyons in April 2021, Newson was sent to Dr. Sybo for care in May 2021.  Given those factual allegations, the Court cannot plausibly infer that Lyons acted with deliberate indifference to a substantial risk that Newson would suffer serious harm.  Newson received the medical attention he sought.

(d.)    The TAC alleges that Lyons, Fink, and the TTCC's "medical" have "done nothing" after being "notified" of the Surgery Order.  Newson's allegation is construed as a demand for immediate surgery.  There is no such constitutional guarantee.  In *Clark v. Corr. Corp. of Am.*, which is factually analogous to Newson's case, the plaintiff acknowledged that he had received medical treatment for a fractured jaw that he had sustained during a fellow inmate's assault. *Clark*, 98 Fed. App'x at 416.  Clark alleged that, "once prison officials knew that his jaw was broken, they should have taken immediate steps to treat it." *Id*.  "As a result of [the defendants'] delay,"

Clark alleged that "he now has permanent nerve damage that can only be corrected by surgery." *Id*; *see also* ECF No. 24-1 at PageID 158.  The Sixth Circuit concluded that Clark insufficiently alleged an Eighth Amendment claim of inadequate medical care.  Clark's allegation of delayed care did not demonstrate that "the treatment rendered [was] so woefully inadequate as to amount to no treatment at all."  *Clark*, 98 Fed. App'x at 416 (citing *Westlake*, 537 F.2d at 860-61).  Like Clark, Newson does not allege sufficient facts demonstrating that Lyons and Warden Fink had a sufficiently culpable state of mind.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Newson received several months of medical care after Newson "explained" his injuries to Lyons in April 2021.  The TAC's vague allegation that Lyons and Fink were "notified" of the Surgery Order does not sufficiently demonstrate their subjective knowledge, and disregard, of the Surgery Order.  *See Farmer*, 511 U.S. at 837; *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("[P]leadings that ... are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

For the above reasons, the TAC insufficiently alleges facts demonstrating Defendants' culpable state of mind about Newson's injuries from the Assault.  The TAC does not allege any new or different facts altering the Screening Order's conclusion that Newson's "contentions do not satisfy the subjective prong of Eighth Amendment analysis."  (*See* ECF No. 22 at PageID 137.) The TAC's Medical Care Claim is DISMISSED WITH PREJUDICE for failure to state a claim to relief.[5]

---

[5]  To the extent the TAC alleges the Medical Care Claim against the TTCC's "medical," *see* ECF No. 24-1 art PageID 158, Newson's allegation fails to state a claim to relief. Collective liability -- *i.e.*, when claims are brought against persons such as a "medical department" -- is not permitted under § 1983.  Suit under § 1983 requires that a defendant acting under color of state law be personally involved in the alleged constitutional deprivation.  *Binay v. Bettendo*rf, 601

### 2.  **The Body Search Claim**

The Initial Pleadings alleged that the Search was humiliating to Newson.  (ECF No. 1 at PageID 2; ECF No. 7 at PageID 36-39; ECF No. 18 at PageID 109.)  The Screening Order concluded that Newson failed to allege facts demonstrating that the Search constituted a constitutional violation.  (ECF No. 22 at PageID 128.)

The TAC alleges that Newson was asked to strip during his October 2020 booking at the MCCJC.  (ECF No. 24-1 at PageID 155.)[6]  Newson complied.  (*Id*.)  Next, a Doe Defendant told Newson to spread his glute cheeks for fifteen seconds.  When Newson complied, the Doe Defendant told Newson "that's not wide enough." (*Id*.)  After the Doe Defendant used his thumbs to spread Newson's glutes wider, the Doe Defendant confirmed that Newson was not carrying contraband.  (*Id*.)  During the Search, the Doe Defendant said to Newson: "Now I can see your brown eye perfectly.  Clean as a whistle." (*Id*.)  After the Search, Newson was permitted to shower. (*Id*.)

The TAC alleges, at most, that Newson was offended by the Doe Defendant's remarks. Harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010), report and recommendation adopted, No. 3-:09-CV-

---

F.3d 640, 650 (6th Cir. 2010).  A group of people, such as a "medical department," is not a "person" subject to suit pursuant to § 1983.  *See Hix v. Tenn. Dep't of Corr.*, 196 Fed. App'x 350, 355 (6th Cir. 2006); *Arty v. Wilson Cnty. Jail*, No. 19-cv-0309, 2019 WL 4748321, at *2 (M.D. Tenn. Sept. 30, 2019).

[6]  The Initial Pleadings and the TAC differ about the date of the Search.  (*See* ECF No. 1 at PageID 2 (August 5, 2020); ECF No. 7 at PageID (August 5, 2020); and ECF No. 24-1 at PageID 154-55 ("late October 2020").)

009, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards").  Just as the Constitution "does not mandate comfortable prisons," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), it does not mandate polite prison guards or officials.  "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).  The TAC's allegations about the Doe Defendant's verbal insult during the Search do not state a claim under § 1983.

The TAC alleges no new or different facts that alter the Screening Order's conclusion about the Body Search Claim.  The TAC insufficiently alleges facts demonstrating that the Search violated Newson's specific constitutional rights.  The TAC's Body Search Claim is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### 3.  <u>The Wrongful Transfer Claim</u>

The Initial Pleadings alleged irregularities in Newson's criminal proceedings in 2020 that caused his wrongful transport from the MCCJC to the BCCX in 2020.  (ECF No. 1 at PageID 2-3; ECF No. 7 at PageID 38.)  The Screening Order concluded that: (1) Newson's challenge to criminal proceedings against him in state court sought relief that is only available through a habeas petition, and not under § 1983; (2) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Newson's claims arising from his criminal conviction and incarceration; and (3) Newson failed to allege the type of extraordinary circumstances that would permit the Court to become involved in Newson's state criminal proceeding.  (ECF No. 22 at PageID 129-31.)

The TAC alleges that Mehr and Rudder confiscated and destroyed Newson's "legal documents" during his booking at the MCCJC on April 6, 2021 (the "Confiscation").  The Confiscation caused a six-month delay in Newson's "ongoing case matters."  (ECF No. 24-1 at

PageID 157.)  On September 7, 2021, Newson's "case matters" were dismissed.  The Assault occurred on February 22, 2021.  (ECF No. 24-1 at PageID 157 (omitting year of the Assault); *see also* ECF No. 18 at PageID 109 (alleging that the Assault occurred on February 23, 2021).)

To the extent the TAC alleges that the Confiscation disrupted Newson's state court proceedings, which in turn caused Newson to wrongfully remain in confinement or wrongfully be transferred to the TTCC where the Assault occurred, the TAC's alleged chronology of events does not support Newson's claim.  According to the TAC, the Assault occurred before the Confiscation.  (*See* ECF No. 24-1 at PageID 157.)

The TAC alleges no new or different facts that alter the Screening Order's conclusion about the Wrongful Transfer Claim, and that claim is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

## B.  THE TAC'S CLAIMS THAT AROSE BEFORE SEPTEMBER 8, 2020 ARE TIME-BARRED

The TAC's factual allegations are difficult to construe.  Newson's factual allegations overlap, *see* ECF Nos. 24-1 at PageID 154-61, and fail to make the "short and plain statement" that Fed. R. Civ. P. 8(a)(2) requires.  Specific dates of several events alleged in the TAC are unclear.  (*Id.*)

To the extent one or more of the TAC's claims arose before September 8, 2020 – *i.e.*, the date the Original Complaint is deemed filed (*see* ECF No. 22 at PageID 124) – those claims are time-barred by the one-year statute of limitations applicable to § 1983 claims in Tennessee.  (*See id.* (internal citations omitted).)  All claims in the TAC that arose before September 8, 2020, are DISMISSED WITH PREJUDICE.  *See* 28 U.S.C. §§ 1915(e) (2)(B)(ii) and 1915A (b)(1).

## C.  THE TAC'S CLAIMS OF DENIAL OF ACCESS TO THE COURTS AND HOUSING MISCLASSIFICATION FAIL TO STATE A CLAIM TO RELIEF

1.  <u>**The TAC's Claim Of Denial Of Newson's Access To The Courts**</u>

The TAC alleges that booking officer John Doe, "on orders [from] Sheriff Mehr and Chief Rudder," seized "all" of Newson's "legal documents" when Newson was booked at the MCCJC in October 2020.  (ECF No. 24-1 at PageID 154 & 157.)  "The legal documents consisted of[:] [1] Hertz Rental Car records which would prove the Plaintiff was falsely accused of a fabricated crime of stealing a car from Dallas, Texas by M.C.S. Deputy Nickell Jacobs[7] … [;] [2] call rap sheet reports that proved Deputy Nickell Jacobs did not pursue a vehicle based off of it being stolen[;] [and] [3] DVDs show[ing] the Plaintiff was unlawfully assaulted by D/S Schaffer an[d] D/S Pipkin, yet fabricated affidavits an[d] charges were filed by the D.A.S. office to frame the Plaintiff" (collectively, the "Seized Materials")  (*Id*. at PageID 156.)  On April 13, 2021, "some of [the] legal documents" were returned to Newson.  (*Id*. at PageID 157.)  The TAC alleges that Mehr and Rudder destroyed the DVDs, rental records, and dispatch records, "which were all material to the Plaintiff's innocence and ongoing matters."  (*Id*.)  The TAC alleges that Newson was denied a parole hearing "due to the failure of Chief Rudder interfering with my court matters since early April 2021."  (*Id*.)  Newson's "case matters were dismissed on September 7, 2021 due to failure to produce and/or present evidence which had been destroyed by the Sheriff an[d] Rudder."  (*Id*.)

To state a claim that defendants interfered with the right to access the court, a plaintiff must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  To establish standing to pursue a First Amendment claim of denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct

---

[7]  Defendant Jacobs's name is inconsistent in Newson's pleadings.  (*See* ECF No. 7 at PageID 35 (Jacob Nickell); ECF No. 18 at PageID 108 (Jacob Nickell); ECF No. 24-1 at PageID 156 (Nickell Jacobs).)

hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 Fed. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

The TAC does not allege sufficient facts demonstrating that Mehr and Rudder interfered with Newson's pursuit of a nonfrivolous claim and that Newson suffered an actual injury because of the alleged interference. It is not clear from the TAC whether: (1) Newson had a lawsuit against Mehr and Rudder that was dismissed because destruction of the Seized Materials deprived Newson of evidence to prosecute his claims; or (2) criminal charges against Newson were dismissed because the destruction left the government without evidence to prosecute claims against Newson. Either interpretation, *see* ECF No. 24-1 at PageID 157, is equally plausible because the TAC is vague. The TAC does not give the Defendants fair notice of the factual bases for Newson's claim.

The TAC does not allege sufficient facts demonstrating a First Amendment claim to relief for denial of access to the courts. That claim is DISMISSED WITH PREJUDICE.

### 2.  The TAC's Claim Of Housing Misclassification

The TAC alleges that Newson requested "final disposition of detainer through Warden Phillips" from "November 1, 2021 through February 2021 [sic]." (ECF No. 24-1 at PageID 159.) When Phillips and "members of BCCX"[8] denied Newson's request, Newson's housing

---

[8]  Neither the BCC nor its housing assignment department qualify as "persons" subject to

classification points changed and he was classified as a medium custody inmate.  (*Id.*)  In February 2021, Newson requested a "final disposition of detainer" through TTCC Records Department case manager Katelyn J. and the TTCC's warden.  (*Id.*)  Katelyn J. and the warden denied Newson's request.  (*Id.*)  Newson remained a medium custody inmate.  (*Id.*)  The TAC alleges that the Assault occurred because Newson was in medium custody housing on February 23, 2021.  (*Id.*)

To the extent the TAC alleges a claim of wrongful housing assignment, Newson's allegation fails to state a cognizable claim.  Prisoners have no constitutional right to confinement in a particular prison, a housing assignment, or a security classification.  *Nunez v. FCI Elkton*, 32 Fed. App'x 724, 725 (6th Cir. 2002); *see also Sandin v. Conner*, 515 U.S. 472, 484–87 (1995); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Williams v. Bezy*, 97 Fed. App'x 573, 574 (6th Cir. 2004).  "As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the ... application of prison policies and procedures."  *Hayes v. Tennessee*, 424 Fed. App'x 546, 550 (6th Cir. 2011) (citing *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979)).  For these reasons, Newson cannot maintain a § 1983 claim for wrongful housing assignment.

To the extent the TAC alleges a claim of failure to follow the BCCX's or the TTCC's administrative policies, that allegation does not, in and of itself, rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  Mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *See Sandin*, 515 U.S. at 484; *see also Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir.

---

suit under 1983.  *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cr. Nov. 6, 2000); *Hix*, 196 Fed. App'x at 355.

1995)).  Section 1983 does not provide a remedy for violations of state laws or regulations.  *See Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).  Newson does not have a constitutional right to the observance of any particular policy of the BCCX or the TTCC regulating housing classification.

The TAC's claim of housing misclassification is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### D.  <u>OFFICIAL CAPACITY CLAIMS AGAINST THE TAC NEW DEFENDANTS</u>

To the extent the TAC sues Lyons, the TTCC warden, Dr. Levik, the John Doe Captain of the TTCC, and the John Doe Nurse of the TTCC in their official capacities, *see* ECF No. 24 at PageID 143-44 and ECF No. 24-1 at PageID 153, those claims are construed as claims against those Defendants' employer, the TTCC.  *See Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).  Claims against the TTCC are construed as claims against CoreCivic, the private corporation that manages the TTCC.[9] *See Shannon v. Risper*, No. 20-cv-0518, 2020 WL 5407729, at *2 (M.D. Tenn. Sept. 8, 2020). CoreCivic "cannot be held liable under a theory of *respondeat superior*."  *Braswell v. Corr. Corp. of Am.*, 419 Fed. App'x 622, 627 (6th Cir. 2011).  To prevail on a § 1983 claim against CoreCivic, Newson "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of Newson's rights.  *Id.*  The TAC does not allege that Lyons's,

---

[9] *See* https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center.html.

the TTCC warden's, Dr. Levik's, the John Doe TTCC Captain's, or the John Doe TTCC Nurse's actions were taken pursuant to an unconstitutional policy or custom of CoreCivic that was the "moving force" behind any violation of Newson's rights.

To the extent the TAC alleges official capacity claims against four John Doe Detention Specialists of the MCSO, those claims are construed as claims against those Specialists' employer, the Madison County Sheriff's Office. *See Jones*, 296 F.3d at 421. Claims against the MCSO are construed as claims against Madison County. *See Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). The TAC does not allege any new or different facts altering the Screening Order's conclusion that Newson "does not allege that he was harmed by a policy or custom of … Madison County." (*See* ECF No. 22 at PageID 127.)

The TAC does not allege sufficient facts demonstrating official capacity claims to relief against the New Defendants[10], and those claims are DISMISSED WITH PREJUDICE.

### E.   THE REMAINING CLAIMS IN THE TAC ARE UNRELATED TO NEWSON'S ORIGINAL PLEADINGS

Other than the claims discussed above, the TAC alleges claims of: (1) retaliatory confinement (ECF No. 24-1 at PageID 155); (2) inadequate prison grievance process (*id.* at PageID 155-56); (3) unconstitutional conditions of confinement in October 2020, November 2020, and April 2021[11] (*id.* at PageID 155-57); (4) Newson's false arrest on March 12, 2021 (*id.* at PageID

---

[10]   To the extent the TAC asserts claims against the Original Defendants, Newson fails to allege new or different facts that alter the Screening Order's conclusions about the Original Defendants. The TAC insufficiently alleges facts demonstrating: a claim to relief against the State of Tennessee (*see* ECF No. 22 at PageID 125); official capacity claims against employees of the State of Tennessee (*id.*); claims against the City of Jackson Tennessee (*id.* at PageID 126-27); official capacity claims against employees of Madison County (*id.*); claims against Judge Atkins (*id.* at PageID 132-33); claims against Assistant District Attorney Benjamin Mayo, Esquire (*id.* at PageID 133); or claims against attorney Kortney D. Simmons, Esquire (*id.* at PageID 134-35).

[11]   Because Newson's factual allegations are vague, it is not clear from the TAC whether

156); and (5) Newson's wrongful imprisonment in April 2021 (*id*. at PageID 157) (collectively, the "Remaining Claims").

(1.)    *New Facts*:   The Remaining Claims allege new facts about events that occurred after Newson filed the Initial Pleadings (*see* ECF Nos. 1, 5, 6, 7 & 18).

The first Remaining Claim alleges that a John Doe Defendant told Newson in October 2020 that Newson was being confined in the MCCJC's "suicide cell" with "the COVID-19 detainees" in retaliation for Newson "being a civil Negra [sic] fighter." (ECF No. 24-1 at PageID 155 (the "Retaliatory Confinement").) The Initial Pleadings (ECF Nos. 1, 7 & 18) do not allege any facts about the Retaliatory Confinement. The Initial Pleadings do not assert a claim of retaliation.

The second Remaining Claim alleges that Newson's (a) October 2020 grievance about the Retaliatory Confinement and (b) March 2021 grievance about his MCCJC cell's toilet conditions "were never returned." (ECF No. 24-1 at PageID 155-56.) The Initial Pleadings do not allege a claim of inadequate prison grievance process. The latest event alleged in the Initial Pleadings is the February 3, 2021 Assault. (*See* ECF No. 18 at PageID 109.)

The third Remaining Claim alleges unconstitutional conditions of confinement. The TAC alleges that Newson had to sleep on the floor at the MCCJC for thirty days in October 2020. (ECF No. 24-1 at PageID 155.) During that time, Newson had "to share the same ventilation system with COVID-19 patients." (*Id*.) The TAC alleges that "live cameras c[ould] see [Newson] naked using the bathroom and everything" at the MCCJC from October 2020 through November 2020. (*Id*.) The TAC alleges that Newson's cell at the MCCJC in April 2021 was a "filthy black mole

---

Newson was confined at the MCCJC or the TTCC at the times of the alleged unconstitutional conditions of confinement. (*See* ECF No. 24-1.)

[sic] covered cell with a broke[n] toilet with feces." (*Id*. at PageID 157.)  The Initial Pleadings do not allege a claim of unconstitutional conditions of confinement.

The fourth Remaining Claim alleges that Newson was falsely arrested on March 12, 2021 "by John Doe Deput[ie]s from [the] MCSO." (*Id*. at PageID 156 (alleging that the D/S John Doe had no warrant for Newson's arrest) (the "False Arrest").)  The fifth Remaining Claim alleges that Newson was wrongfully imprisoned at the MCCJC in April 2021.  (*Id*. at PageID 157 (the "Wrongful Imprisonment").)  The False Arrest and the Wrongful Imprisonment post-date the Assault that is alleged in the Initial Pleadings.  The Initial Pleadings do not allege facts about Newson's arrest or imprisonment in 2021.

(2.)   *The Remaining Claims Violate The Federal Rules Of Civil Procedure*:   The Remaining Claims violate Fed. R. Civ. P. 20(a)(2).[12]  The Remaining Claims would add new defendants who are unconnected to the Initial Pleadings by a common occurrence or a common question of fact or law.

The Remaining Claims violate Fed. R. Civ. P. 18(a) because those Claims add allegations not related to allegations in the Initial Pleadings under Fed. R. Civ. P. 15(c)(1)(B).[13]  An amendment adding new parties is a new cause of action and does not relate back for purposes of the statute of limitations.  *Asher v. Unarco Material Handling, Inc*., 596 F.3d 313, 318 (6th Cir.

---

[12] "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

[13] "An amendment to a pleading relates back to the date of the original pleading when: … (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading …"  Fed. R. Civ. P. 15(c)(1)(B).

2010); *Holt v. Target Corp.*, No. 3:20-cv-0824, 2021 WL 2389476, at *5 (M.D. Tenn. May 6, 2021).

(3.)     *The Remaining Claims Evince Bad Faith By Newson*:   To permit Newson to proceed in this single action on unrelated claims that should be litigated in a separate action(s) would allow Newson: (a) to avoid paying the filing fees required for separate actions; and (b) to circumvent the three-strikes provision of 28 U.S.C. § 1915(g) as to any new and unrelated claims for which the Court might recommend "strike" consideration.  *See*, *e.g.*, *Kelly v. Olin*, No. 06-cv-2448, 2008 WL 650429, at *6 (D. Colo. Mar. 7, 2008).  If adjudicated in this case, the Remaining Claims would: (a) render Newson's operative § 1983 pleading a moving target; (b) permit Newson to test the validity of the Initial Pleadings' claims, and then move on to entirely different claims -- without submitting payment for an additional lawsuit; and (c) allow Newson to circumvent § 1915(g).  *See Cannon v. Washington,* 418 F.3d 714, 720 (7th Cir. 2005).

For these reasons, the Remaining Claims are DISMISSED WITH PREJUDICE.

## III.   **AMENDMENT UNDER THE PLRA**

The Court DENIES leave to amend the TAC (ECF No. 24-1).  *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *Lucas v. Chalk*, 785 Fed. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree

with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

Newson has amended his claims several times in this case.  (*See* ECF Nos. 5, 6, 7 & 18.) It would be futile to give Newson another opportunity.

**IV.    <u>APPELLATE ISSUES</u>**

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Newson would be taken in good faith.  *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999).  Under Rule 24(a), if the district court permits a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization.  There is an exception when the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*."  Fed. R. App. P. 24(a)(3)(A).  If the district court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The test for whether a party appeals in good faith is whether the litigant seeks appellate review of any issue that is not frivolous.  *Id.*  "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*."  *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).  For the same reasons the Court dismisses Newson's TAC for failure to state a claim, the Court finds that an appeal would not be taken in good faith.  The Court therefore CERTIFIES, under Federal Rule of Appellate Procedure 24(a), that any appeal by Newson would not be taken in good faith.  The Court DENIES leave to proceed on appeal *in forma*

*pauperis*. If Newson appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

## V.     NOTICE OF STRIKE RECOMMENDATION

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Newson's future filings, if any, the Court recommends that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021).

## VI.     CONCLUSION

For the reasons explained above:

(1)     The TAC (ECF Nos. 24 & 24-1) is DISMISSED WITH PREJUDICE for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2);

(2)     Leave to amend is DENIED;

(3)     Newson's application to add the Remaining Claims (*see* ECF No. 24-1 at PageID 155-57) is DENIED and the Remaining Claims are DISMISSED WITH PREJUDICE;

(4)     The Motion For Summons (ECF No. 25) is DENIED as moot;

(5)     The Court recommends that the dismissal of this case be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons*, 2021 WL 1727619, at *1;

(6)     This case is DISMISSED in its entirety;

(7)     The Court CERTIFIES that an appeal would not be taken in good faith; and

(8)     The Court DENIES leave for Newson to proceed *in forma pauperis* on appeal.

IT IS SO ORDERED this 30th day of June, 2022.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE